IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 10, 2010

## ADRIAN K. NELSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Warren County**
**No. F-9266     Larry B. Stanley, Jr., Judge**

---

**No. M2009-02166-CCA-R3-PC - Filed January 12, 2011**

---

The petitioner, Adrian K. Nelson, appeals the denial of his petition for post-conviction relief, arguing that he was deprived of the effective assistance of counsel at trial and on appeal. Following our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Jean M. Brock, McMinnville, Tennessee, for the appellant, Adrian K. Nelson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; and Lisa Zavogiannis, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was convicted in 2005 by a Warren County Circuit Court jury of possession of .5 grams or more of cocaine with the intent to sell, evading arrest, felony reckless endangerment, leaving the scene of an accident, resisting arrest, and driving on a suspended license, second offense. He was subsequently sentenced by the trial court as a Range II, multiple offender to eighteen years for the possession of cocaine conviction, four years for the evading arrest conviction, four years for the felony reckless endangerment conviction, thirty days for the leaving the scene of an accident conviction, six months for the resisting arrest conviction, and eleven months, twenty-nine days for the driving on a suspended license conviction. The trial court ordered that the sentences for evading arrest

and felony reckless endangerment be served concurrently to each other but consecutively to the eighteen-year sentence for possession of cocaine. The court ordered that the remaining sentences be served concurrently to each other, for a total effective sentence of twenty-two years in the Department of Correction. On direct appeal, this court affirmed the convictions and sentences with the exception of the conviction for felony reckless endangerment, which we reversed and remanded for a new trial. See State v. Nelson, 275 S.W.3d 851, 856-71 (Tenn. Crim. App. 2008).

Our direct appeal opinion provides the following account of the evidence that led to the petitioner's convictions:

Immediately preceding trial, the trial court held a hearing on the motion to suppress. During that hearing, Officer Chris DeLong of the McMinnville Police Department testified that he was patrolling the area around Bobby Branch Road and Cascade Road after receiving information about suspected drug activity in that area. While parked approximately fifty feet away from Mark's Market, Officer DeLong observed a red vehicle pull into the parking lot and park next to a gold vehicle. Officer DeLong saw a man get out of the gold vehicle and get into the red vehicle where it "appeared to [him] that an exchange of some kind took place." Officer DeLong was unable to see what, if anything, was exchanged but believed it to be a "possible drug transaction."

When the red vehicle left the parking lot, Officer DeLong followed the vehicle. He noticed that the license plate was not securely attached to the vehicle. According to Officer DeLong, the license plate was "hanging a little bit uneven" and was "slightly tilted to one side." At that time, Officer DeLong activated the blue lights on his patrol car. Rather than stopping, the red vehicle increased speed. Officer DeLong continued to pursue the red vehicle until it struck another vehicle. Officer DeLong then p[e]nned the red vehicle between his patrol car and the other vehicle in an intersection. [The petitioner], the driver of the red vehicle, fled on foot. Officer DeLong pursued [the petitioner] on foot. After chasing [the petitioner] for some time, Officer DeLong caught up to him. A scuffle ensued while Officer DeLong was trying to arrest [the petitioner]. Officer DeLong recovered a blue container "approximate to the scene of the scuffle" that contained several white rocks of a substance appearing to be cocaine. [The petitioner] also had a check for an unspecified amount and $114 in cash on his person.

Because of [the petitioner's] failure to stop when Officer DeLong activated his blue lights, the trial court determined that the seizure of the blue

container by Officer DeLong was proper, regardless of whether the officer had a reasonable suspicion to initiate the stop based on the license plate. The trial court noted that the "exchange" witnessed by Officer DeLong was not a reason to initiate a stop of [the petitioner].

At the conclusion of the hearing, the trial court denied the motion to suppress, and the trial began. At trial, Officer DeLong's testimony was mostly repetitive of his testimony at the hearing on the motion to suppress with the addition of information that the rock-like substance was tested and was .5 grams of cocaine.

[The petitioner] took the stand at trial. [The petitioner] testified that he drove his girlfriend's car to Mark's Market to buy a cigar so that he could smoke crack. [The petitioner] saw an acquaintance, Mr. Barnhill, in the parking lot of the market. [The petitioner] claimed that Mr. Barnhill did not get into his vehicle that day. [The petitioner] saw Officer DeLong sitting in his patrol car at the nearby intersection and was "kind of paranoid" because he was "high." [The petitioner] testified that he "had been up all night" using drugs. When Officer DeLong activated his blue lights, [the petitioner's] "intention was to pull over." However, when [the petitioner] "got to the stop-sign [sic]," Officer DeLong "pushed [him] into the truck." [The petitioner] admitted that he ran from the vehicle with his drugs in a blue container that were for "personal use." [The petitioner] ran until he was "out of gas" and "tired." [The petitioner] stated that he "never resisted" arrest, but that Officer DeLong "slammed [him] to the ground." [The petitioner] admitted that he had been using drugs since he was seventeen. He denied ever selling drugs even though he admitted that he had several prior convictions that involved the sale of drugs. At the conclusion of the proof, the jury found [the petitioner] guilty of the offenses as charged in the indictment.

Id. at 857-58 (footnote omitted).

The petitioner filed a timely petition for post-conviction relief on November 25, 2008, and, following the appointment of counsel, an amended petition on March 2, 2009, in which he raised the claim of ineffective assistance of trial and appellate counsel. He alleged that trial counsel was ineffective for, among other things: failing to file a motion to disqualify the district attorney's office on the grounds that the district attorney had represented the petitioner in a previous drug case; failing to file a motion in limine to exclude the petitioner's prior drug convictions; failing to raise the admission of the prior convictions as an issue in the motion for new trial and failing to adequately represent the petitioner at the motion for

new trial; failing to prepare an adequate defense to the cocaine evidence; failing to request a jury instruction on the inference of casual exchange; failing to challenge the trial court's application of enhancement factors; failing to object to the timing of the hearing on the motion to suppress; and failing "to fulfill obligations as petitioner's defense counsel." The petitioner additionally alleged that appellate counsel was ineffective for failing to provide argument or citation to authority when raising the enhancement factor issue in the appellate brief.

At the evidentiary hearing, trial counsel, who said he was licensed in 2001, testified that on the day of the trial he was seriously ill with a brain injury that had been misdiagnosed as a sinus condition. Although he was taking large amounts of pseudoephedrine, he was in intense pain, "extremely confused" and "[u]nable to concentrate, . . . hear, speak, pay attention[,] . . . read [his] own notes [or] remember if [he] had asked a particular question or not." He had prepared questions to ask the witnesses, but because he was unable to read at the time of trial due to his illness, he "kind of scrapped it all and . . . was winging it poorly." Trial counsel stated that he should not have been in the courtroom that day, and he opined that the petitioner was prejudiced by his poor trial performance.

Trial counsel acknowledged that he asked no questions of the Tennessee Bureau of Investigation ("TBI") chemist who had analyzed the cocaine and testified that he never considered having the cocaine reweighed by an independent expert. He stated that he discussed the petitioner's prior convictions with him and was aware that he had several drug convictions, including a conviction for possession with intent to sell. He was unaware, however, that the Warren County District Attorney had represented the petitioner in one of those earlier drug cases.

Trial counsel said he knew that the hearing on the motion to suppress was going to be held immediately prior to the trial due to logistics problems. He acknowledged that he did not file a motion to exclude the petitioner's prior drug convictions but explained that he thought they would come in regardless because their defense strategy consisted of attempting to convince the jury that the petitioner was an addict rather than a dealer:

> I mean it would have come in anyway. Our defense was that [the petitioner] is addicted. He's an addict. He's not a dealer. He's an addict and his record would show that, you know. He's been around drugs his whole life and he is an addict.

Trial counsel had no recollection of the prosecutor's statement at trial that the parties had stipulated to the drug conviction evidence as "going to the intent needed for the possession with intent to sell," stating that he must have misunderstood, as he thought the

-4-

evidence was being introduced solely for impeachment purposes. He agreed that such a stipulation was highly prejudicial and that it defeated the defense theory of the petitioner's having been solely a user.

Trial counsel testified that he prepared for the sentencing hearing and was feeling better physically at that time but that he was not supposed to have been involved. He later explained that the petitioner had asked for a different attorney and that the petitioner's brother had hired several different lawyers to represent him. The trial court, however, had not yet relieved trial counsel, which led to "a lot of confusion with other attorneys that were involved." Trial counsel said that he filed a motion for new trial because he was unsure if any of the other lawyers had filed anything and he wanted to preserve the petitioner's issues for appeal. He stated that he was finally relieved from representation at the hearing on the motion for new trial and that another attorney took over the case at that point.

On direct and cross-examination, trial counsel acknowledged that he was thirty minutes late to court on a day in which the State presented one of its plea offers in the case, which left him with only twenty minutes in which to discuss the offer with the petitioner. He said that the petitioner was very upset about his late arrival, that he believed the petitioner's resulting hostility made it difficult for him to communicate with him, and that, had the circumstances been different, the petitioner might have had a different response to the offer.

On cross-examination, trial counsel testified that his medical problem on the day of the trial was a cluster headache. He acknowledged that he was experiencing a similar kind of headache on the first day of the bar examination, which he passed on the first attempt, but said that he believed the bar examination required a different kind of performance from that required at trial. He further acknowledged that he knew that the petitioner was going to testify that he did not sell drugs, which would "open[] the door" for his prior convictions to be introduced.

Trial counsel testified the case was set for trial three different times and that he was fully prepared at each setting. He acknowledged that he did not ask for a continuance on the day the case went to trial and said that, in hindsight, he probably should have done so. He further acknowledged that the State made a plea offer to the petitioner approximately two years before the trial and a second verbal plea offer approximately one year later, both of which were rejected by the petitioner.

Trial counsel testified that he did not challenge the findings of the TBI expert as to the drug evidence because the cocaine weighed less than the weight listed in the original charge by the time the laboratory had completed its testing and he had no reason to suspect any irregularities in the TBI's analysis of the evidence. He said he did not ask for a jury

instruction on the inference of casual exchange because the petitioner was indicted for possession with the intent rather than for the sale of cocaine.

Larry Bryant testified that he was a former assistant district attorney and had prosecuted the case against the petitioner. He identified the certified judgments of the petitioner's prior convictions introduced at trial and said that there was nothing on them to indicate that Dale Potter, the District Attorney, had represented the petitioner on any of the cases. In addition, the petitioner never mentioned Potter's name or indicated that he knew him. Bryant could not recall his discussions with trial counsel surrounding the stipulation but said that he had researched the law and that the petitioner's "convictions to prove intent . . . would have come in whether or not he stipulated to it because that was the status of the law at the time." He also recalled, after reviewing the transcript, that the petitioner opened the door to the introduction of the prior convictions by mentioning them in his testimony. Bryant agreed that it would have been improper for the trial court to instruct the jury on casual exchange because the petitioner was charged with possession with the intent to sell rather than sale of cocaine and said that, given the facts of the case, the only proper lesser-included offense instruction, which was issued by the trial court, would have been for simple possession. He recalled that trial counsel had "runny sinuses" during the trial but otherwise appeared fine and that he made an appropriate and coherent argument. Finally, he explained that the hearing on the motion to suppress was held immediately prior to the start of the trial as a matter of convenience to the arresting officer, who had left law enforcement to enter private business in North Carolina.

The petitioner, testifying in rebuttal, stated that District Attorney General Potter had represented him for a couple of months in 1997 in one of his previous drug cases until he fired him and hired another attorney. He said that during the course of Potter's representation he divulged the prejudicial information that he had sold drugs. He also stated that trial counsel informed him about the State's first plea bargain offer while he was in jail, mentioning a possible three-year sentence and telling the petitioner that he would return to talk with him again after further discussion with the State. According to the petitioner, counsel did not return until three months later, at which time he told him that the three-year offer was no longer on the table.

The post-conviction court denied the petition at the conclusion of the hearing, issuing detailed oral findings of fact and conclusions of law, followed by a lengthy written order entered on February 23, 2010. Thereafter, the petitioner filed a timely notice of appeal to this court, challenging the post-conviction court's finding that he received effective assistance of counsel.

## ANALYSIS

-6-

## I. Post -Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

## II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The same principles apply in determining the effectiveness of both trial and appellate counsel. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995).

## III.  Specific Allegations of Ineffective Assistance

### A.  Failure to Move for Disqualification of District Attorney's Office

The petitioner first contends that trial counsel provided ineffective assistance for failing to file a motion to disqualify the district attorney's office from prosecuting his case on the grounds that the district attorney had represented the petitioner in a previous drug case. The post-conviction court made the following findings of fact and conclusions of law with respect to this claim:

> Defendant/Petitioner alleges that Mr. Dale Potter[] had been his trial attorney for a brief period of time in approximately the early part of 1997, and therefore should not have prosecuted the Defendant/Petitioner in this cause. The testimony of counsel was that he had not been told that the Defendant/Petitioner had ever been represented by Mr. Potter. There was no statement by the Defendant/Petitioner that he ever let his trial counsel know that Mr. Potter had represented him many years before. Therefore his attorney had no reason to raise that as an objection. The proof showed that the Defendant/Petitioner was not prejudiced.

The record fully supports the findings and conclusions of the post-conviction court. According to the evidence presented at the evidentiary hearing, neither trial counsel nor the prosecutor was aware of any former association between the district attorney and the petitioner. Moreover, there was nothing in the judgment forms of the petitioner's prior convictions to indicate the district attorney's involvement in any of those cases. Indeed, as the State points out, there is no proof in the record, aside from the petitioner's own testimony, to show that the district attorney actually represented the petitioner in one of the prior cases or that the petitioner divulged information that would have resulted in an unfair trial in the case at bar. As such, the petitioner has not met his burden of showing either a deficiency in counsel's performance or resulting prejudice to his case.

### B.  Failure to File Motion to Exclude Prior Convictions

The petitioner next contends that trial counsel provided ineffective assistance for failing to file a motion in limine to exclude his prior drug convictions and for stipulating to the admission of the evidence at trial. In denying relief on the basis of this claim, the post-conviction court found that "it would have been appropriate" for trial counsel to file a motion

-8-

to exclude the convictions and that trial counsel was therefore "deficient in that regard," but it would not have changed the outcome of the trial "based on the fact that the Defendant/Petitioner was going to testify and did testify regarding his use of [c]ocaine."

With respect to this allegation, we agree with the State that the petitioner has not met his burden of showing either deficient performance or resulting prejudice. Trial counsel essentially testified that he saw no reason to move to exclude the convictions, as his trial defense strategy, which he maintained throughout his lengthy preparation for the case, consisted of attempting to show that the petitioner was a drug addict rather than a drug dealer, which meant that the evidence was going to come in regardless of any motion he might have filed. He also testified that he knew beforehand that the petitioner was going to claim during his testimony that he was a drug addict rather than a dealer, which would then open the door to the prior convictions as impeachment evidence.

In assessing an allegation of ineffective assistance of counsel, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In light of the relatively damning evidence against the petitioner, trial counsel's defense strategy, which, if successful, might have resulted in the jury's finding the petitioner guilty of the lesser-included offense of simple possession, was not unreasonable. Since the defense strategy depended in large part on the petitioner's testimony about his history of drug abuse and his claim that he was not a dealer, we cannot conclude that counsel was deficient for his failure to file a motion to exclude the prior convictions or that the petitioner was prejudiced by his failure to do so.

## C. Ineffective Assistance at Motion for New Trial

The petitioner contends that trial counsel provided ineffective assistance by failing to raise the admission of the prior convictions as an issue in the motion for new trial and by failing to adequately represent him at the hearing on the motion. The post-conviction court made the following findings of fact and conclusions of law with respect to this claim:

> In regards to ineffective assistance of counsel in the Defendant/Petitioner's Motion for New Trial and on Appeal, the Court of [Criminal] Appeals ruled on the Motion for New Trial. This Motion was filed and stipulated that there was an Amendment to said Motion. This Court ruled on those issues and the Court of [Criminal] Appeals reviewed the issues then subsequently upheld the Trial Court. The Court did not find anything presented in this hearing that should have been included that was not. There is no

evidence that counsel was ineffective or that Defendant/Petitioner was prejudiced.

The record supports the findings and conclusions of the post-conviction court. Trial counsel explained the confusion surrounding the petitioner's representation, which resulted from the actions of the petitioner and his family. He also testified that he filed a motion for new trial to preserve the petitioner's rights. As the State points out, neither the motion for new trial nor the transcript of the hearing is included in the record before this court. Our recitation of facts in the direct appeal opinion, however, corroborates trial counsel's account:

> The record reflects that [the petitioner] was convicted on April 15, 2005. On May 12, 2005, [the petitioner] filed a timely motion for new trial through trial counsel. [The petitioner] was sentenced in September of 2005, and in January of 2006, trial counsel filed a motion to amend the motion for new trial. In that motion, trial counsel explained:
>
>> [The petitioner's] family has hired several attorneys who, for reasons unknown, have yet to announce. The original motion was filed in the confusion created by several attorneys to preserve [the petitioner's] rights. The presumption was that who ever argued this motion would amend it. Due to circumstances beyond [the petitioner's] control, that task has fallen back to me, trial counsel. . . . Therefore, I respectfully request this motion be granted to preserve [the petitioner's] constitutional rights.
>
> The trial court held a hearing on the motion for new trial in February of 2006. At that hearing, the trial court noted that trial counsel was never "removed as the attorney of record" despite some concerns by [the petitioner] that he wanted to change attorneys. Prior to sentencing, there was apparently some confusion as to who was going to represent [the petitioner]. [The petitioner] mentioned one attorney as a possibility. Some time later, [the petitioner] even indicated to the trial court that he had retained a third attorney to proceed with the motion for new trial and on appeal. All three of these attorneys appeared at the hearing on the motion for new trial. One of the attorneys expressed a desire to go forward with the motion as filed by trial counsel. The trial court commented that there did not "need to be any proof on a Motion for New Trial" and stated that it was prepared to "review the motion" and make a ruling.

Nelson, 275 S.W.3d at 862-63.

In the direct appeal, we rejected the petitioner's claim that he was prejudiced because no argument was made on the motion, finding that "the trial court properly considered the motion on the merits before denying the motion" and that the petitioner had "failed to show that he was prejudiced in this process." Id. at 863.

Here, the petitioner has not met his burden of showing that counsel was deficient in his performance with respect to the motion for new trial or that he was prejudiced as a result of the alleged deficiencies. We conclude, therefore, that the petitioner is not entitled to relief on the basis of this claim.

### D.  Failure to Provide Defense to Cocaine Evidence

The petitioner contends that trial counsel provided ineffective assistance by failing to provide an adequate defense to the cocaine evidence. Specifically, he complains of trial counsel's failure to cross-examine the TBI expert or to have the drugs analyzed by an independent expert. In denying relief on the basis of this claim, the post-conviction court found that there was no reason for trial counsel to cross-examine the TBI agent, as there was "never any question" that the substance was cocaine and the weight of the substance was lessened in the testing and transportation process. We agree that the petitioner has not shown that counsel's decision not to cross-examine the TBI agent or to hire an independent expert constituted deficient performance, or that the petitioner suffered any prejudice. We conclude, therefore, that the petitioner is not entitled to relief on the basis of this claim.

### E.  Failure to Request Jury Instruction on Casual Exchange

The petitioner next contends that trial counsel provided ineffective assistance by his failure to request a jury instruction on the inference of casual exchange pursuant to Tennessee Code Annotated section 39-17-419, which provides as follows:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a). The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

-11-

The post-conviction court found no merit to this claim, noting that this court has "ruled that [c]asual [e]xchange is not a lesser included offense of [p]ossession with the [i]ntent to [s]ell" and finding that the proof at trial "shows that there [was] no allegation that any controlled substances ever changed hands."

The petitioner raised the trial court's failure to instruct on the inference of casual exchange as an issue in his direct appeal. We deemed the issue waived due to the fact that it was not requested at trial or raised in the motion for new trial, but we also noted that "casual exchange is not a lesser included offense of possession of cocaine with the intent to sell." Nelson, 275 S.W.3d at 865 (citing State v. Timothy Wayne Grimes, No. M2001-01460-CCA-R3-CD, 2002 WL 31373472, at *6 (Tenn. Crim. App. Oct. 16, 2002)). That fact alone, however, does not mean that the trial court should not have instructed the jury on the inference of casual exchange. In Grimes, we concluded that an instruction on the inference of casual exchange was warranted, even though an instruction on casual exchange as a lesser-included offense of possession with intent to deliver was not, because there was evidence from which a jury could have reasonably inferred that the defendant's sending of a Clonazepam pill to a fellow jail inmate was due to his friendship with the inmate and not as a part of his business of selling pills in the jail. Grimes, 2002 WL 31373472, at *6.

We respectfully disagree with the post-conviction court's finding that there was no evidence in the case at bar that any controlled substances ever changed hands. Although the officer was unable to see what, if anything, was passed between the petitioner and the second man who entered the petitioner's vehicle, he testified that he saw what appeared to him to be an exchange of some kind taking place inside the vehicle. Thus, there was some evidence in support of a jury instruction on the inference of casual exchange. However, in light of the petitioner's testimony that no one entered his vehicle, as well as the fact that the jury was instructed on the lesser-included offense of simple possession, we cannot find that counsel was deficient for not requesting the instruction or that the petitioner was prejudiced as a result. We conclude, therefore, that the petitioner is not entitled to relief on the basis of this claim.

### F. Failure to Challenge Enhancement Factors

The petitioner contends that trial counsel was ineffective for failing to challenge the trial court's application of enhancement factors on the basis that the court's finding of the factors violated his Sixth Amendment right to trial by jury. The State argues that the trial court would have been justified in sentencing the petitioner above the minimum in his range, even had trial counsel raised a Blakely v. Washington, 542 U.S. 296 (2004), challenge to the sentences, based on the petitioner's extensive criminal history. We agree with the State. Although we declined to exercise plain error review of the sentences in the direct appeal opinion, we nonetheless observed that

[the petitioner's] previous criminal convictions justified the enhancement of his sentence. The presentence report indicates that [the petitioner] had an extensive criminal history, including, among other things, four convictions for possession of cocaine, one conviction for criminal trespassing, three convictions for resisting arrest, one conviction for evading arrest, one conviction for criminal impersonation, two convictions for driving with a suspended license, one conviction for theft, and a weapons offense.

Nelson, 275 S.W.3d at 870.

We conclude, therefore, that the petitioner has not met his burden of demonstrating prejudice as a result of counsel's failure to challenge the application of the enhancement factors.

## G.  Failure to Object to Timing of Suppression Hearing

The petitioner contends that trial counsel provided ineffective assistance for failing to object to the fact that the suppression hearing was scheduled immediately before the start of the trial, arguing that "he was not afforded due process of law because his counsel did not have adequate time to determine the strategy of his defense after the judge's ruling on the motion." He also complains of trial counsel's failure to raise the timing of the suppression hearing as an issue in the motion for new trial, which prevented him from being able to raise the issue in his direct appeal.

We find no merit to this claim.  Trial counsel testified that the case was set for trial on three different dates and that he was fully prepared at each setting.  He also testified that he was aware that the suppression hearing was scheduled immediately before the start of the trial and that his trial defense strategy remained consistent throughout his preparation for the case. Trial counsel did not express any concerns with the scheduling of the hearing, but he did opine that he was so ill on that date that he could not have provided effective assistance of counsel to the petitioner at the hearing or at the trial that followed.  He acknowledged, however, that he had not read the trial transcripts and could not point to any particular instances of deficiencies in his representation.  The petitioner has not, therefore, shown any deficiency in counsel's performance based on his failure to object to the timing of the suppression hearing or that he suffered any prejudice as a result.

## H.  Failure to Fulfill Obligations as Defense Counsel

The petitioner next contends that trial counsel provided ineffective assistance when he "encountered several other issues which he should have brought to the attention of the court

-13-

to fulfill his obligations to [the petitioner]." Specifically, he complains about trial counsel's late arrival to court on the date of the plea offer, his failure "to fulfill his obligation to investigate the case fully," and his failure to inform the court of his serious illness and to request a continuance of the trial.

The post-conviction court made the following findings and conclusions pertinent to this claim:

> In regards to trial counsel['s] ineffectiveness for failure to prepare a proper defense, the Court has read the transcript of the pretrial and the trial testimony. It appears that counsel for the Defendant/Petitioner asked appropriate questions and also engaged in a Motion to Suppress which was overruled. The appropriate legal arguments appeared to be made and coherent. Therefore, they were simply not granted. There is no evidence that trial counsel was ineffective or that Defendant/Petitioner was prejudiced.
>
> . . . .
>
> Trial counsel indicated confusion during the trial and during the Motion to Suppress. The transcript indicates just the opposite, that trial counsel was coherent, knew what was happening, heard the Motion to Suppress and went on to try the case while asking appropriate questions.

The record fully supports the findings and conclusions of the post-conviction court. We do not doubt counsel's testimony that he felt wretched on the day of trial and was unable later to recall any of the specifics of what transpired. However, as the post-conviction court noted, there is nothing in the transcript to reflect that trial counsel did not adequately perform his duties as defense counsel at the suppression hearing and at trial. We conclude, therefore, that the petitioner is not entitled to relief on the basis of this claim.

## I. Appellate Counsel's Failure to Provide Argument or Citation in Brief

Finally, the petitioner contends that appellate counsel provided ineffective assistance by failing to provide argument or citation to authority when raising the enhancement factor issue in the appellate brief. The State argues, among other things, that the petitioner has not met his burden of demonstrating any prejudice, as he has not shown a reasonable probability that he would have prevailed on the issue had it been properly briefed on appeal. We agree with the State.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE